# EXHIBIT M

| | |
|---|---|
| **From:** | Joey Costyn <Jcostyn@fordharrison.com> |
| **Sent:** | Monday, August 23, 2010 9:49 PM |
| **To:** | Michael Wallender; Nathan Sabourin |
| **Cc:** | Philip Davidoff |
| **Subject:** | RE: Compliance with Court Order, Interrogatory and Document Requests -  Local Rule 7.1(d) Conference |
| **Attachments:** | Atlanta-513917-v1-Sterling Planet- Bennett- Letter to M. Wallender responding to deficient discovery.DOC; Atlanta-513967-v1-Bennett v. Sterling Planet-  Attachment A (RBS info).XLS; Atlanta-513968-v1-Bennett v. Sterling Planet   Attachment B (Suffolk County LIPA info).PDF; Atlanta-513969-v1-Bennett v. Sterling Planet   Attachment C (Sierra Pacific).PDF |

Michael,

   Pursuant to our conversation today, I am providing the attached written response to your letter dated August 19, 2010.  The documents that are attached to this email are designated as "Confidential" pursuant to the Stipulation and Protective Order.

Joey

---

**From:** Michael Wallender [mailto:MWallender@CouchWhite.com]
**Sent:** Monday, August 23, 2010 9:28 AM
**To:** Joey Costyn
**Cc:** Philip Davidoff; Nathan Sabourin
**Subject:** RE: Compliance with Court Order, Interrogatory and Document Requests - Local Rule 7.1(d) Conference

## Local Rule 7.1(d) Conference:

Joey:

1. After we had called you for the 9:00 am Local Rule 7.1(d) Conference we received your email that you wanted to again reschedule the conference,  to 1:00 pm today. Plaintiff agrees to do so under a reservation of all rights.

2. Your continuing disregard of the Court Order, Interrogatory  and Document Requests and  approach to Local Rule 7.1(d) are unacceptable and, indeed, sanctionable.

3. Last Friday, 8/20/10 you agreed to the rescheduling of the depositions which had been slated for September 2 and 3. We need to obtain alternative dates, but the depositions scheduling continues to be predicated upon the Defendant's substantive obligation to have properly answered Interrogatory #4 (due 7/7/10; Court Ordered for 8/9/10 and  still not answered) provision of complete responses to Document Demands 11-14 (likewise due 7/7/10; Court Ordered for 8/9/10 and continuing  significant deficiencies, including those detailed in Plaintiff's 8/19/10 letter).

Regards,

Mike

Michael T. Wallender, Esq.
Couch White, LLP
P.O. Box 22222
540 Broadway
Albany, NY  12201-2222
518-320-3422

CONFIDENTIALITY – PRIVILEGE NOTICE:  Information contained in this e-mail is intended only for the personal and confidential use of the recipient(s) named above.  This message may be an attorney-client communication and as such is privileged and confidential.  If you are not the intended recipient, this serves as notice to you that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited.  If you have received this communication in error, please delete the original message and any attachments thereto and immediately notify the sender via e-mail or by telephone at (518) 426-4600.  Thank you.

IRS CIRCULAR 230 DISCLOSURE:  To ensure compliance with requirements imposed by the U.S. Treasury and IRS, we inform you that any federal tax advice contained in this communication (including attachments) is not intended or written to be used and cannot be used for the purpose of (i) avoiding tax penalties that may be imposed under the Internal Revenue Code, or (ii) promoting, marketing, or recommending to another person any transaction or matter addressed herein.

---

**From:** Joey Costyn [mailto:Jcostyn@fordharrison.com]
**Sent:** Monday, August 23, 2010 9:04 AM
**To:** Michael Wallender
**Cc:** Philip Davidoff; Nathan Sabourin
**Subject:** RE: Compliance with Court Order, Interrogatory and Document Requests - Local Rule 7.1(d) Conference


Michael, I am not available this morning, what about 1:00 today?
-----Original Message-----
From: Michael Wallender [mailto:MWallender@CouchWhite.com]
Sent: Fri 8/20/2010 5:51 PM
To: Joey Costyn
Cc: Philip Davidoff; Nathan Sabourin
Subject: RE: Compliance with Court Order, Interrogatory and Document Requests -  Local Rule 7.1(d) Conference

Joey:

This matter is urgent. We will again reschedule our Local Rule 7.1(d) Conference,  to Monday, 8/23/10 at 9:00 am. , in yet another effort to obtain full compliance and reduce the disadvantage that has been imposed upon the Plaintiff.

We reiterate our concerns regarding Defendant's violations of the 8/3/10 Court Order and its discovery obligations generally. While we appreciate your agreement to reschedule the Depositions slated for September 2 & 3, , we must have full compliance with the outstanding discovery matters. All rights are reserved.

Regards,

Mike


Michael T. Wallender, Esq.

Couch White, LLP

P.O. Box 22222

540 Broadway

Albany, NY  12201-2222

518-320-3422

CONFIDENTIALITY - PRIVILEGE NOTICE: Information contained in this e-mail is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and as such is privileged and confidential. If you are not the intended recipient, this serves as notice to you that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please delete the original message and any attachments thereto and immediately notify the sender via e-mail or by telephone at (518) 426-4600. Thank you.

IRS CIRCULAR 230 DISCLOSURE: To ensure compliance with requirements imposed by the U.S. Treasury and IRS, we inform you that any federal tax advice contained in this communication (including attachments) is not intended or written to be used and cannot be used for the purpose of (i) avoiding tax penalties that may be imposed under the Internal Revenue Code, or (ii) promoting, marketing, or recommending to another person any transaction or matter addressed herein.

_____

From: Joey Costyn [mailto:Jcostyn@fordharrison.com]
Sent: Friday, August 20, 2010 3:19 PM
To: Michael Wallender
Cc: Philip Davidoff; Nathan Sabourin
Subject: RE: Compliance with Court Order, Interrogatory and Document Requests - Local Rule 7.1(d) Conference

I will not be able to talk today, currently being treated by a specialist. I understand if you want to push depos back, and will not oppose. Forgive any errors, typing this on my phone and I can't see too well right now.

August 23, 2010

JOEY M. COSTYN
(404) 888-3811
jcostyn@fordharrison.com

Michael T. Wallender, Esq.
Couch White, LLP
540 Broadway
Albany, NY  12207-2743

      Re:    Kelly Bennett v. Sterling Planet, Inc.

Dear Mr. Wallender:

      This letter is in response to your letter dated August 19, 2010:

      (1) A substantive response to Interrogatory #4. Defendant has provided a spreadsheet that Defendant contends is responsive, but has not provided an actual substantive Interrogatory response that identifies each transaction on Exhibit A, the gross profit for each transaction on Exhibit A (defined as Sterling Planet revenue received from customer minus any broker fees paid to Broker to supply renewable energy and minus supply costs), and identifying the supply, purchase and broker agreement upon which these calculations are based.

      **<u>RESPONSE</u>:**  It is Defendant's contention that the spreadsheet provided in response to Interrogatory No. 4 is in compliance with the request and with the Court's Order.  Interrogatory No. 4 requested Defendant to "set forth in detail the amount of any gross profit (defined as Sterling Planet revenue received from customer minus any broker fees paid to Broker to supply renewable energy and minus supply costs) for each customer contract or transaction identified in the Confidential Spreadsheet, attached hereto as Exhibit 'A,' together with the figures used by the Defendant to compute the applicable gross profit." Defendant produced a spreadsheet which set forth gross profit as well as the figures used to compute it: revenue, supply cost, and broker fees for each such transaction, which is specifically what was requested by Interrogatory No. 4.

      In our conversation today, you indicated that there were several transactions listed on Exhibit "A" that were not included in the spreadsheet produced by Defendant in response to Interrogatory No. 4.  After review and consultation with my client, I determined that "Clean Currents," "E4 2006 Conference," "Hartwick College," "RBS Citizens, N.A.," "Suffolk County," and "Stop & Shop" were indeed omitted from the response.  Defendant's explanation and correction for these omissions are as follows:

      **Clean Currents**:  involved two extremely low volume transactions ($363.00 and $493.58 total revenue) with to Clean Currents, which was a company owned by one of Defendant's independent sales agents, and through which outside customers were typically referred by the

Michael T. Wallender, Esq.
August 23, 2010
Page 2

agent.  As such, this transaction was not reported as a sale in any of Defendant's records.  While Defendant admits that the total revenue from the transaction equaled $363.00 and $493.58, it does not have any records from which it can identify the specific supply that was applied to the sale, and cannot therefore calculate total profit.  In the interest of efficiency, Defendant is willing to stipulate a 50% profit for this particular transaction.

**E4 2006 Conference**:  This was not a sale, but was a donation and/or trade of renewable energy credits in exchange for the ability to participate in the conference.  Accordingly, Defendant is unable to calculate any "gross profit" from this transaction, as it received no revenue for this transaction.

**Hartwick College**:  Other than several emails where Hartwick is mentioned and a two page proposal, all of which Defendant has already produced, Defendant has no records of any final sale being made to Hartwick College.

**RBS Citizens**:  When compiling the information in response to Interrogatory No. 4, Defendant did not initially identify that it had made a sale to RBS due to the fact that RBS obtained renewable energy credits through an independent third party- Connecticut Light & Power ("CL&E").  CL&E offered renewable energy credits to its customers, and used Defendant as a supplier of those credits.  Defendant has reviewed its contracts with RBS and its supply contracts, and provides the attached spreadsheet which includes the information that Plaintiff seeks in Interrogatory No. 4 for RBS.  ("Attachment A" hereto).  To the extent that any of the supply contracts referenced have not been produced, Defendant will produce via electronic means by the end of the week, with hard copy to follow.

**Suffolk County**:  When compiling the information in response to Interrogatory No. 4, Defendant did not initially identify that it had made a sale to Suffolk County due to the fact that Suffolk County obtained renewable energy credits through an independent third party- the Long Island Power Authority ("LIPA").  LIPA offered renewable energy credits to its customers, and used Defendant as a supplier of those credits.  Defendant has reviewed its contracts with LIPA and its LIPA payment records, and has records of Suffolk County purchasing only $1,014.01 worth of credits at a rate of $6.85 per Megawatt Hour via LIPA.  ("Attachment B" hereto, some of which has already been produced).  Defendant does not maintain records from which it can identify the supply used to fulfill this particular purchase, but, as indicated for Clean Currents, would be willing to stipulate a 50% profit for this particular transaction in the interest of efficiency.

**Stop & Shop:**  This transaction was inadvertently omitted from the spreadsheet provided by Defendant in response to Interrogatory No. 4.  As indicated in the Purchase Order already produced by Defendant, Stop & Shop purchased $7,398.00 of credits at a rate of $2.74 per Megawatt Hour on May 21, 2007.  Defendant does not maintain records from which it can identify the supply used to fulfill this particular purchase, but, as indicated for Clean Currents and Suffolk County, above, would be willing to stipulate a 50% profit for this particular transaction in the interest of efficiency.

Michael T. Wallender, Esq.
August 23, 2010
Page 3

  (2) Any profit and supply contract information for the following transactions indicated on Exhibit A -

   (i)  Clean Currents;

   (ii)  EBA/NYS;

   (iii)  Hartwick College/ Pinelake Environmental Campus;

   (iv)  Hamilton College (2009 REC Year);

   (v)  RBS Citizens, N.A.;

   (vi)  Rutherford;

   (vii)  Suffolk County; and

   (viii)  The Stop and Shop Supermarket Company.

  **RESPONSE:** Defendant has produced all profit figures and supply contracts in its possession, custody, or control for the above listed transactions, including the documents being produced herewith.

  (3)  Any profit and supply information for the 2006, 2007, and 2010 REC Years, for any of the transactions indicated on Exhibit A.

  **RESPONSE:** The spreadsheet produced by Defendant in response to Interrogatory 4, in addition to the supplemental responses contained herein, identify profits earned by Defendant for the 2006, 2007, 2008, 2009, and 2010 REC Years. The majority of the transactions claimed by Plaintiff were supplied with credits purchased by Defendant during the 2008 and 2009 REC Years, which Defendant was able to apply to sales made within a 21 month period for each such REC Year.

  (4)  Proposals, attestations, invoices, purchase orders, supply contracts or purchase/sale agreements for the following transactions indicated on Exhibit A-

   (i)  Hartwick College;

   (ii)  Onondaga Community College;

   (iii)  Navalis Company, Inc.; and,

   (iv)  Suffolk County.

Michael T. Wallender, Esq.
August 23, 2010
Page 4

**RESPONSE:**   Defendant has no documents confirming any purchase by Hartwick College.  Defendant has produced all proposals, attestations, invoices, purchase orders, supply contracts and purchase/sale agreements in its possession, control, or custody for Onondago Community College, Navalis Company, and Suffolk County.

(5)      Any correspondence related to the following transactions indicated

on Exhibit A –

(i)      550 West Washington Property, LLC; and,

(ii)      ACORE.

**RESPONSE:**   Defendant has produced all correspondence in its possession, control, or custody with regard to each customer listed on Exhibit A.

(6)      Purchase/sales agreements, attestations, or invoices for the 2007 REC Year for Mohawk Paper.

**RESPONSE:**   Defendant does not possess any attestation from the 2007 REC Year for Mohawk Paper, and has produced all invoices and purchase/sales agreements in its possession, custody, or control for Mohawk Paper, including documents from 2007.

(7)      All attestations, purchase/sales contracts, purchase orders, and invoices for the 2009 REC Year for Intel Corporation contracts indicated on Exhibit A.

**RESPONSE:**   Defendant has produced all attestations, purchase/sales contracts, purchase orders, and invoices in its possession, custody, or control for Intel Corporation for the years claimed by Plaintiff.

(8)      Supply contract information (*e.g.*, REC price and volume) for the following supply contracts identified in Defendant's spreadsheet of alleged profits for the transactions indicated on Exhibit A -

(i)      "'Noble Environmental Power Hold Co" - Eagle Envelope Company (Wind);

(ii)      "Sierra Pacific Industries" - Hamilton College) (Biomass);

(iii)      "Georgia Pacific" - Intel Corporation (Biomass);

(iv)      "Alliant Energy" - Intel Corporation (Wind); and,

Michael T. Wallender, Esq.
August 23, 2010
Page 5

       (v)      "MidAmerican" - Mohawk Paper (Wind).

    **RESPONSE**:

(i)      Noble: supply contract already produced.

(ii)     Sierra Pacific Industries:  Defendant inadvertently omitted this contract from production.   A copy is attached hereto as Attachment C.

(iii)    Georgia Pacific:  supply contract already produced.

(iv)    Alliant Energy:  supply contract already produced.

(v)      MidAmerican:  supply contract already produced.


    With regard to depositions, you indicated that you would be available on September 23-24, and on September 30-October 1.  I am available on September 30-October 1, and am waiting for confirmation that my client will be able to attend on those dates as well.  I will let you know as soon as I hear back.


                  Sincerely,


                  JOEY M. COSTYN

JMC2/kk
C:\Documents and Settings\jcostyn\Local Settings\Temporary Internet Files\OLK3A1E\Atlanta-513917-v1-Sterling Planet- Bennett- Letter to M Wallender responding to deficient discovery.DOC

**2009**

| | MWh Sold | Supply Price | | Cost | Supplier |
|---|---|---|---|---|---|
| **National Wind** | 19,262.00 | $1.00 | $ | 19,262.00 | Tatanka Wind Power |
| | 10,345.00 | $0.90 | $ | 9,310.50 | Ottertail Power Company |
| | 11,843.00 | $1.00 | $ | 11,843.00 | Tatanka Wind Power |
| | | | | | |
| **Regional Wind** | 284.00 | $16.00 | $ | 4,544.00 | Conectiv Energy Supply Inc. |
| | 3,378.00 | $6.50 | $ | 21,957.00 | Invenergy Renewable LLC |
| | 2,546.00 | $19.50 | $ | 49,647.00 | Iberdrola Renewables LLC |
| | 11,557.00 | $6.50 | $ | 75,120.50 | Invenergy Renewable LLC |
| | 7,105.00 | $6.50 | $ | 46,182.50 | Invenergy Renewable LLC |
| | | | | | |
| **NEPOOL Hydro** | 4,845.00 | $1.25 | $ | 6,056.25 | Connecticut Municipal Electric Energy Cooperative |
| | 2,859.00 | $1.10 | $ | 3,144.90 | Massachusetts Technology Collaborative |
| | 5,437.00 | $1.15 | $ | 6,252.55 | Grey K Reneable Energy Limited c/o RNK Capital LLC |
| | 491.00 | $1.25 | $ | 613.75 | Connecticut Municipal Electric Energy Cooperative |
| | 2,948.00 | $1.20 | $ | 3,537.60 | Conservation Services Group |
| | | | | | |
| **Supply Cost** | **82,900.00** | **$3.11** | **$** | **257,471.55** | |
| **Total Revenue** | | | | **345,000.00** | |
| **Gross Profit:** | | | | **87,528.45** | |

**2010**

| | MWh Sold | Supply Price | Cost | Supplier |
|---|---|---|---|---|
| **National Wind** | 12,755.48 | $0.95 | $12,117.71 | MidAmerican |
| | 8,998.00 | $0.95 | $8,548.10 | MidAmerican |
| **Regional Wind** | 5,598.00 | $16.00 | $89,568.00 | Conectiv Energy Supply Inc. |
| | 2,811.00 | $19.50 | $54,814.50 | Iberdrola Renewables LLC |
| | 981.00 | $19.50 | $19,129.50 | Iberdrola Renewables LLC |
| | 284.00 | $16.00 | $4,544.00 | Conectiv Energy Supply Inc. |
| | 3,378.08 | $6.50 | $21,957.52 | Invenergy Renewable LLC |
| **CT Hydro** | 165.00 | $2.50 | $412.50 | Summit Hydropower Inc. |
| **NEPOOL Hydro** | 1,245.00 | $0.60 | $747.00 | Watson Associates |
| | 332.00 | $0.60 | $199.20 | Watson Associates |
| | 899.00 | $0.60 | $539.40 | Watson Associates |
| | 525.00 | $0.50 | $262.50 | Enel North America |
| | 1,603.00 | $0.50 | $801.50 | Enel North America |
| **Totals** | **39,574.56** | **$5.40** | **$213,641.43** | |



# LIPA Green Choice
# Municipal Incentive Program Application
### (For William H. Rogers Building)

| Municipality Name **Suffolk County** | | | |
|---|---|---|---|
| Contact Person Name **Javed Ashraf, P.E., C.E.M.** | Title **Energy Engineer** | Phone **631-852-4229** | E-Mail **jashraf@suffolkcountyny.gov** |
| Address Street **335 Yaphank Avenue** | Town **Yaphank** | **NY** | Zip Code **11980** |

*The Municipality must contact an approved LIPA Green Choice Green Marketer to complete this application. The application must be submitted to LIPA by the Green Marketer.*

**By applying for the incentive the Municipality understands and acknowledges that:**

1. LIPA is offering municipalities a financial incentive for participation in the LIPA Green Choice program.
2. LIPA will reimburse the municipality for up to half the municipality's cost to participate in Green Choice up to a maximum of 1 cent/kWh for each kWh which is enrolled in Green Choice and for which the municipality has contracted to pay a LIPA-approved Green Marketer a contracted price for the purchase of environmental attributes.
3. The financial incentive is subject to a maximum of $30,000 per municipality per calendar year and is first come, first serve based on the estimated kWh usage of the subject LIPA accounts. The incentive will run until December 31, 2008 contingent on available funding.
4. The municipality must contact its Green Marketer to complete the LIPA Green Choice Municipal Incentive Program Application. The Green Marketer will need to complete the Application by providing to LIPA (1) the original application signed by the municipality, (2) a list of the LIPA account numbers already enrolled on Green Choice or intended to be enrolled on Green Choice along with the unit environmental attribute price in cents/kWh associated with each account and (3) the expiration date of the municipality /Green Marketer contract as applicable.
5. Eligibility:
   a.   Must be a LIPA customer
   b.   Villages, cities, towns and counties
   c.   City of New York accounts located in the 5th Ward of Queens (Rockaway Peninsula)
   d.   Bills must be paid by municipal government, not special districts
6. The incentive is retroactive to January 1, 2006 for existing LIPA Green Choice accounts that are on the Green Choice program as of December 31, 2006.
7. Incentive checks from LIPA will be issued quarterly to each municipality based on the kWh usage of a prior quarter.
8. kWh usage for accepted accounts  will be based on LIPA  meter read data
9. Incentive payments to municipalities are subject to revisions due to subsequent adjustments and/or corrections in kWh usage.
10. Incentive payments to municipalities will only be made if the municipality's LIPA accounts are current and not in arrears.
11. Applications received by LIPA after September 30, 2008 will not be accepted.
12. Applicants will be advised by LIPA via email of the acceptance, rejection or waiting list status of their application within 3 weeks of LIPA's receiving the completed application from the municipality's Green Marketer.
13. In return for the incentive LIPA asks the municipality to promote the LIPA Green Choice program to its  constituents by displaying Green Choice brochures in appropriate  places (literature rack in town hall) and by promoting  the program via normal communications channels (newsletter, etc.)

| Municipality To Complete: | Green Marketer To Complete: |
|---|---|
| Print Name Thomas LaGuardia, P.E. | Company Name: **Sterling Planet** |
| Signature | Contact Name: **Joseph Barclay** |
| Title   **Chief Engineer** | Phone: 516-987-4285 email: jbarclay@sterlingplanet.com |
| Date   **March 16, 2007** | Date: March 16, 2007 |
| **INTERNAL USE** | |
| Date Received | Account/Price list received?    Yes  N o |
| Status: Accepted___  Rejected___  Wait List___ | Reviewer Name_____ |



# LIPA Green Choice
# Municipal Incentive Program Application
### (For H. Lee Dennison Building)

| Municipality Name | | | |
|---|---|---|---|
| **Suffolk County** | | | |
| Contact Person Name | Title | Phone | E-Mail |
| **Javed Ashraf, P.E., C.E.M.** | **Energy Engineer** | **631-852-4229** | **jashraf@suffolkcountyny.gov** |
| Address | | | |
| Street **335 Yaphank Avenue** | Town **Yaphank** | **NY** | Zip Code **11980** |

*The Municipality must contact an approved LIPA Green Choice Green Marketer to complete this application. The application must be submitted to LIPA by the Green Marketer.*

**By applying for the incentive the Municipality understands and acknowledges that:**

1. LIPA is offering municipalities a financial incentive for participation in the LIPA Green Choice program.
2. LIPA will reimburse the municipality for up to half the municipality's cost to participate in Green Choice up to a maximum of 1 cent/kWh for each kWh which is enrolled in Green Choice and for which the municipality has contracted to pay a LIPA-approved Green Marketer a contracted price for the purchase of environmental attributes.
3. The financial incentive is subject to a maximum of $30,000 per municipality per calendar year and is first come, first serve based on the estimated kWh usage of the subject LIPA accounts. The incentive will run until December 31, 2008 contingent on available funding.
4. The municipality must contact its Green Marketer to complete the LIPA Green Choice Municipal Incentive Program Application. The Green Marketer will need to complete the Application by providing to LIPA (1) the original application signed by the municipality, (2) a list of the LIPA account numbers already enrolled on Green Choice or intended to be enrolled on Green Choice along with the unit environmental attribute price in cents/kWh associated with each account and (3) the expiration date of the municipality /Green Marketer contract as applicable.
5. Eligibility:
    a. Must be a LIPA customer
    b. Villages, cities, towns and counties
    c. City of New York accounts located in the 5th Ward of Queens (Rockaway Peninsula)
    d. Bills must be paid by municipal government, not special districts
6. The incentive is retroactive to January 1, 2006 for existing LIPA Green Choice accounts that are on the Green Choice program as of December 31, 2006.
7. Incentive checks from LIPA will be issued quarterly to each municipality based on the kWh usage of a prior quarter.
8. kWh usage for accepted accounts will be based on LIPA meter read data
9. Incentive payments to municipalities are subject to revisions due to subsequent adjustments and/or corrections in kWh usage.
10. Incentive payments to municipalities will only be made if the municipality's LIPA accounts are current and not in arrears.
11. Applications received by LIPA after September 30, 2008 will not be accepted.
12. Applicants will be advised by LIPA via email of the acceptance, rejection or waiting list status of their application within 3 weeks of LIPA's receiving the completed application from the municipality's Green Marketer.
13. In return for the incentive LIPA asks the municipality to promote the LIPA Green Choice program to its  constituents by displaying Green Choice brochures in appropriate  places (literature rack in town hall) and by promoting  the program via normal communications channels (newsletter, etc.)

| Municipality To Complete: | Green Marketer To Complete: |
|---|---|
| Print Name Thomas LaGuardia, P.E. | Company Name: **Sterling Planet** |
| Signature *Thomas K. LaGuardia* | Contact Name: **Joseph Barclay** |
| Title   **Chief Engineer** | Phone: 516-987-4285 email: jbarclay@sterlingplanet.com |
| Date   **March 16, 2007** | Date: March 16, 2007 |
| INTERNAL USE | |
| Date Received | Account/Price list received?   Yes  N o |
| Status: Accepted___ Rejected___ Wait List___ | Reviewer Name_____ |

## 1 Choose ONE offering from a LIPA Green Choice marketer.

| | | Wind | Hydro | Bio Energy | PRICE |
|---|---|---|---|---|---|
| **Community Energy • www.NewWindEnergy.com • 1-866-WIND 123** | | | | | |
| ☐ | NewWindEnergy® | 100% | | | 2 ¢/kWh |
| ☐ | NewWindEnergy® & Water | 60% | 40% | | 1 ¢/kWh |
| **EnviroGen • www.EnviroGen.net • 1-716-631-1517** | | | | | |
| ☐ | Green Power Program | | 25% | 75% | 1 ¢/kWh |
| **Sterling Planet • www.SterlingPlanet.com • 1-800-473-1362** | | | | | |
| ☐ | Sterling Green™ | 40% | 30% | 30% | 1.5 ¢/kWh |
| ☒ | New York Clean™ | 10% | 55% | 35% | 0.687 ¢/kWh |

## 2 My purchase will be based on ☒ 100% or ☐ 50% of my total usage.

Name: SUFFOLK COUNTY DPW  Address: 335 YAPHANK AVENUE  Town: YAPHANK  State: NY  Zip: 11980

670.45.0310-1  Email Address: JASHRAF@SUFFOLKCOUNTYNY•  Daytime Phone #: 631-852-4229
LIPA Account # (WILLIAM H.ROGERS BLDG.)

I understand that the LIPA Green Choice charges will be included as an additional charge on my monthly
LIPA bill, and that these charges will not take effect until I am enrolled by my selected marketer.  Signature  Thomas A. Claudio
Chief Engineer





## What is Green Power?

Green power is electricity that is generated using cleaner, renewable resources like wind, hydropower and bio-energy.

## Make Your Neighbors Green with Envy ...... Make the LIPA Green Choice to Cleaner Energy

New Yorkers are more concerned than ever before about our dependence on fossil fuels. Exploring new and innovative solutions to traditional electric generation has become a priority on Long Island and throughout the state. Now there is another way that you can have an impact on the environment. You can support the development of electric generation using cleaner, renewable resources by enrolling in the LIPA Green Choice Program.

## Make a Difference with the LIPA Green Choice

Green power costs more than electricity generated from fossil fuels. The good news is that the costs are dropping as more people support green power. For fifty cents a day or less, you can join the LIPA Green Choice Program and support cleaner, greener power in New York State.

**A LIPA Green Choice customer can expect to pay an additional $4 to $15 a month, depending on the selected offering.***

*Based upon LIPA residential customer average monthly use of 770 kWh.

## The Choice is Up to You

The LIPA Green Choice Program is entirely voluntary, and you can choose from a variety of renewable resources.

LIPA works with the New York State Public Service Commission to ensure that generation using renewable resources, supported by your participation in LIPA Green Choice, is located within New York State.

**If just ten percent of New York's households choose green power for their electricity supply, it would prevent nearly:**
- **three billion pounds of carbon dioxide**
- **ten million pounds of sulfur dioxide**
- **four million pounds of nitrogen oxides**

**from getting into our air each year.**

## Making the LIPA Green Choice is as Easy as 1...2...3

Enrolling in LIPA Green Choice is easy. All you have to do is:

1. Compare the offerings on the attached postpaid reply card
2. Decide which offering you'd like to support
3. Complete the reply card and drop it in the mail

LIPA shares your concern for the environment. We Long Islanders are proud to be some of the most environmentally conscious citizens in the country. Together, we can make a choice for a greener Long Island!

For additional information please contact:

www.SterlingPlanet.com  1-800-473-1362
www.EnviroGen.net  1-716-631-1517
www.NewWindEnergy.com  1-866-WIND-123

**LIPA**
Long Island Power Authority
www.lipower.org



**Choose the LIPA Green Choice Program**

SAY **Yes** To Clean Power For Our Future



**LIPA**
Long Island Power Authority

---

LIPA
First Class
US Postage
**PAID**
Hicksville, NY
Permit No. 12


**LIPA**
Long Island Power Authority
131 S. Hoffman Lane
Islandia, NY 11749

---

LIPA GREEN CHOICE PROGRAM
131 S. HOFFMAN LANE
ISLANDIA, NY 11749-9401

POSTAGE WILL BE PAID BY ADDRESSEE

**BUSINESS REPLY MAIL**
FIRST CLASS MAIL   PERMIT NO. 10   MINEOLA, NY

NO POSTAGE
NECESSARY
IF MAILED
IN THE
UNITED STATES

| **1** Choose ONE offering from a LIPA Green Choice marketer. | Wind | Hydro | Bio Energy | PRICE |
|---|---|---|---|---|
| **Community Energy** • www.NewWindEnergy.com • 1-866-WIND 123 | | | | |
| ☐ NewWindEnergy® | 100% | | | 2 ¢/kWh |
| ☐ NewWindEnergy® & Water | 60% | 40% | | 1 ¢/kWh |
| **EnviroGen** • www.EnviroGen.net • 1-716-631-1517 | | | | |
| ☐ Green Power Program | | 25% | 75% | 1 ¢/kWh |
| **Sterling Planet** • www.SterlingPlanet.com • 1-800-473-1362 | | | | |
| ☐ Sterling Green™ | 40% | 30% | 30% | 1.5 ¢/kWh |
| ☒ New York Clean™ | 10% | 55% | 35% | 0.687 ¢/kWh |

**2** My purchase will be based on ☒ 100% or ☐ 50% of my total usage.

Name: SUFFOLK COUNTY DPW  Address: 335 YAPHANK AVENUE  Town: YAPHANK  State: NY  Zip: 11980

8 2 2 . 0 5 . 4 8 0 0 . 1
LIPA Account # (H. LEE DENNISON BLDG)  Email Address: JASHRAF@SUFFOLKCOUNTYNY.GOV  Daytime Phone #: 631-852-4229

I understand that the LIPA Green Choice charges will be included as an additional charge on my monthly LIPA bill, and that these charges will not take effect until I am enrolled by my selected marketer.  Signature  _Thomas R. _____
Chief Engineer

## What is Green Power?

Green power is electricity that is generated using cleaner, renewable resources like wind, hydropower and bio-energy.

## Make Your Neighbors Green with Envy ......
## Make the LIPA Green Choice to Cleaner Energy

New Yorkers are more concerned than ever before about our dependence on fossil fuels. Exploring new and innovative solutions to traditional electric generation has become a priority, on Long Island and throughout the state. Now there is another way that you can have an impact on the environment. You can support the development of electric generation using cleaner, renewable resources by enrolling in the LIPA Green Choice Program.

## Make a Difference with the LIPA Green Choice

Green power costs more than electricity generated from fossil fuels. The good news is that the costs are dropping as more people support green power. For fifty cents a day or less, you can join the LIPA Green Choice Program and support cleaner, greener power in New York State.

## The Choice is Up to You

The LIPA Green Choice Program is entirely voluntary and you can choose from a variety of renewable resources.

LIPA works with the New York State Public Service Commission to ensure that generation using renewable resources, supported by your participation in LIPA Green Choice, is located within New York State.

If just ten percent of New York's households choose green power for their electricity supply, it would prevent nearly:
• three billion pounds of carbon dioxide
• ten million pounds of sulfur dioxide
• four million pounds of nitrogen oxides from getting into our air each year.

## Making the LIPA Green Choice is as Easy as 1...2...3

Enrolling in LIPA Green Choice is easy. All you have to do is:
1. Compare the offerings on the attached postpaid reply card
2. Decide which offering you'd like to support
3. Complete the reply card and drop it in the mail

LIPA shares your concern for the environment. We Long Islanders are proud to be some of the most environmentally conscious citizens in the country. Together, we can make a choice for a greener Long Island!

For additional information please contact:
www.SterlingPlanet.com    1-800-473-1362
www.EnviroGen.net          1-716-631-1517
www.NewWindEnergy.com      1-866-WIND 123

**A LIPA Green Choice customer can expect to pay an additional $4 to $15 a month, depending on the selected offering.***

*Based upon LIPA residential customer average monthly use of 770 kWh



LIPA
Long Island Power Authority
www.lipower.org



Choose the
LIPA Green Choice
Program

SAY **Yes**
To Clean Power
For Our Future

**LIPA**
Long Island Power Authority



LIPA
First Class
US Postage
**PAID**
Hicksville, NY
Permit No. 12

**LIPA**
Long Island Power Authority
131 S. Hoffman Lane
Islandia, NY 11749

LIPA GREEN CHOICE PROGRAM
131 S. HOFFMAN LANE
ISLANDIA, NY 11749-9401

POSTAGE WILL BE PAID BY ADDRESSEE

**BUSINESS REPLY MAIL**
FIRST CLASS MAIL   PERMIT NO. 10   MINEOLA NY

NO POSTAGE
NECESSARY
IF MAILED
IN THE
UNITED STATES



Utility. Util Act No., Marketer. Mktr Act No., Customer.Trans. Date, Meter No., Purpose. Svc. Type, Meters. Util Rate,Meter Reading Start Date,Start Meter Reading,Meter Reading End Date,End Meter Reading, Read Type, Reading Total,UOM, Number of Dials,Conversion Factor. Pressure Factor. Season. Next Read Date, Backout-Credit,Ref  Num
KEYSPAN ENERGY LI,848068529I,822054600I,STERLING PLANET,005270629I,,SUFF COUNTY DPW,02/08/2010,079149427,ORIGINAL,EL,1, 0285,01/25/2010,,02/05/2010,,ACTUAL,0,KH,,,ON-PEAK,,,0210020809000015
KEYSPAN ENERGY LI,848068529I,822054600I,STERLING PLANET,005270629I,,SUFF COUNTY DPW,02/08/2010,079149427,ORIGINAL,EL,1, 0285,01/25/2010,,02/05/2010,,ACTUAL,0,KH,,,ON-PEAK,,,0210020809000015
KEYSPAN ENERGY LI,848068529I,822054600I,STERLING PLANET,005270629I,,SUFF COUNTY DPW,02/08/2010,079149427,ORIGINAL,EL,1, 0285,01/25/2010,,02/05/2010,,ACTUAL,39600,KH,,,OFF-PEAK,,,0210020809000015
KEYSPAN ENERGY LI,848068529I,822054600I,STERLING PLANET,005270629I,,SUFF COUNTY DPW,02/08/2010,079149427,ORIGINAL,EL,1, 0285,01/25/2010,,02/05/2010,,ACTUAL,108000,KH,,,INTERMEDIATE,,,0210020809000015
KEYSPAN ENERGY LI,848068529I,822054600I,STERLING PLANET,005270629I,,SUFF COUNTY DPW,02/08/2010,079149427,ORIGINAL,EL,1, 0285,01/25/2010,,02/05/2010,,ACTUAL,736.2,K1,,,INTERMEDIATE,,,0210020809000015

New York Clean =   $0.687 cents per kWh or $0.00687

| Rate | | kWh | Total |
|---|---|---|---|
| 0.00687 | x | 39.600 | 272.052 |
| 0.00687 | x | 108.000 | 741.96 |
| | | | $1,014.01 |

# GREEN CERTIFICATE SALES AGREEMENT

THIS GREEN CERTIFICATE SALES AGREEMENT ("**Agreement**") is entered into as of August 10, 2005 ("**Effective Date**"), by and between Sterling Planet, Inc., a Georgia corporation with offices at 3295 River Exchange Drive, Suite 300, Norcross, Georgia  30092-4238 ("**Sterling Planet**"), and the party identified below (the "**Seller**") (collectively referred to herein as the "**Parties**," and individually referred to herein as a "**Party**".

| | |
|---|---|
| **Name:** | Sierra Pacific Industries |
| **State of Incorporation:** | California |
| **Address:** | P. O. Box 496028 |
| | Redding, California  96049-6028 |
| **Contact/Title:** | Bob Ellery / Director of Energy Resources |
| **Phone:** | (530) 378-8179 |
| **Fax:** | (530) 378-8139 |
| **E-mail:** | bellery@spi-ind.com |

## RECITALS

1. Seller has the marketing rights to the environmental attributes to certain renewable energy facilities, the details of which are set forth in Exhibit 1 to this Agreement (the "Projects").

2. The Projects also represent and create certain characteristics that arise from the generation of electricity using a renewable energy source, referred to herein as "Green Certificates," which includes all such attributes from electric generation or other processes.

3. Sterling Planet is in the business of marketing Green Certificates from producers and reselling them to retail and wholesale Clients.

4. Seller wishes to sell Green Certificates created by the Project ("Project Green Certificates") and Sterling Planet wishes to buy such Green Certificates from Seller.

NOW, THEREFORE, in consideration of the above recitals and the mutual promises of the parties set forth below, Sterling Planet and Seller agree as follows:

## AGREEMENT

**1.   Green Certificate Unit Contract Price.** Sterling Planet has determined the Contract Price for 500,000 MWh (100,000 MWh per year for five years) of Green Certificates produced by the Projects as $0.80 per MWh.  Sterling Planet will pay Seller the Contract Price for all Green Certificates purchased from the Projects.

**2.   Green Certificate Total Contract Price.** Sterling Planet has agreed to pay a total of $400,000.00 for 500,000 MWh the Green Certificates Defined in Table 1 of this Agreement.

**3.   Payment Schedule.** Sterling Planet has agreed to pay either

\_\_\_\_\_   on a one-time basis, or

\_\_X\_\_   the payment schedule defined at the end of this Agreement

the amount specified in Paragraph 2 of this Agreement for the Green Certificates defined in Table 1 within thirty (30) days after receipt of invoice.  Seller shall provide certificates within thirty (30) days from receipt of payment.

**4.   Certification.** Sterling Planet has used

\_\_X\_\_   Green-e, or

\_\_\_\_\_   Environmental Resources Trust (ERT), or

\_\_\_\_\_   Neither

certification processes for this transaction.

**5.   Publicity and Disclosure.** Both parties agree to allow each of the participants the use of company names, logos, etc. solely for the purpose of business development and publicizing and promoting the green energy marketing effort.  Press releases will not be released without the review and approval of each party.  Other uses of company names, logos, etc are not authorized.  Under mutually agreed to language, Sterling Planet and Seller will issue a press release educating the

marketplace about this green energy purchase within a few days after execution of this Agreement.

**6. Confidential Information.** It may be necessary for each party to provide the other party information necessary to permit performance of their respective obligations hereunder. The parties agrees that all information including cost estimates, financial and other information provided by the other party, which is clearly marked as being confidential information, will be held in strict confidence, and upon the expiration or earlier termination of this Agreement, the parties and their respective officers, employees, agents, advisors and representatives, will continue to hold such information in confidence and will promptly return to the other all documents provided by the other party. The parties obligation to treat such information confidential shall terminate at the expiration of three (3) years from the termination of this Agreement. Nothing in this Agreement shall limit either party's use or disclosure of information which:

A) Is now generally known or available on an unrestricted basis to the public or becomes so known or available on an unrestricted basis through no fault of the receiving party, or

B) Is already in the receiving party's possession without restriction as to its use or disclosure prior to its receipt from the disclosing party, or

C) Is acquired by the receiving party on an unrestricted basis from any third party, provided that the receiving party does not know or have reason to know, or is not informed subsequent to disclosure by such third party and prior to disclosure by the disclosing party, that such information was acquired under an obligation of confidentiality, or

D) Information that was developed by or for the receiving party independently of and without reference to the information of the disclosing party.

**7. Administration of Agreement.** Each party hereby designates its employees identified below as its contract administrator for this Agreement. The contract administrator(s) shall be responsible for representing their respective employers in all matters relative to the administration of this Agreement. Each party may change its designated administrator(s) by giving not less than ten (10) days prior written notice of its new contract administrator to the other party.

Sterling Planet Administrator:
Mel Jones
Telephone No.:    (404) 513-0259

Seller Contract Administrator:
Bob Ellery
Telephone No.:    (530) 378-8179

**8. Notices.** All notices or other communications given, delivered or made under this Agreement by either party to the other party will be in writing and will be delivered personally or by first class mail or by facsimile. If such communication is delivered by facsimile the party receiving such communication will confirm receipt of that communication in writing by means of return facsimile. All notices shall be delivered or sent to the other party at the address shown below or to any other address as the party may designate by ten (10) days prior written notice given in accordance with this paragraph.

If to Sterling Planet:
Sterling Planet, Inc.
3295 River Exchange Drive
Suite 300
Norcross, Georgia  30092-4238
Attention: Mel Jones
Telephone No.:    (404) 513-0259
Fax No:              (678) 325-3174

If to Seller:
Sierra Pacific Industries
19794 Riverside Avenue
Anderson, California  96007
Attention: Bob Ellery
Telephone No.:    (530) 378-8179
Fax No:              (530) 378-8139

**9. Independent Contractor.** The parties agree that they are independent contractors for the purpose and activities undertaken in accordance with or as contemplated in this Agreement, and that no party will be considered or permitted to be an agent, servant, joint venturer or partner of any other party. It is expressly understood and agreed that neither party has any right or authority to directly or indirectly incur any obligation or responsibilities on behalf of the other party or commit the other party to any matter or understanding or make any warranties or representations with respect to the Project, without the other party's prior written consent.

**10. Limitation of Liability.** Neither party to this Agreement shall have any liability to any of the parties with respect to the Project's Green Certificates or its work in the exercise of its defined responsibilities. IT IS UNDERSTOOD AND AGREED THAT THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, WRITTEN OR ORAL, STATUTORY OR OTHERWISE, WITH RESPECT TO THE SERVICES EACH PARTY

WILL PROVIDE PURSUANT TO THIS AGREEMENT. NEITHER PARTY TO THIS AGREEMENT SHALL BE LIABLE TO THE OTHER FOR ANY UNFORESEEABLE INDIRECT, INCIDENTAL, CONSEQUENTIAL OR SPECIAL DAMAGES, INCLUDING, WITHOUT LIMITATION, ANY LOSS OF REVENUES OR LOSS OF PROFITS.

**11. Non-Circumvention.** During the term of this Agreement and for two years afterwards, Seller will not circumvent the relationship with Sterling Planet's customers, subcontractors, and marketing partners and Sterling Planet will not circumvent the relationship with Seller's customers, subcontractors, and marketing partners with respect to any prospect or business opportunity delivered by the other party.

**12. Governing Law.** This Agreement shall be governed by, subject to, and construed in all respects in accordance with the laws of the State of Georgia, U.S.A.

**13. Assignment Prohibited.** Neither party shall assign or otherwise transfer any of its rights or obligations under this Agreement without the prior written consent of the other party. Any assignment in violation of this provision shall be deemed to be null and void.

**14. Duplicate Originals.** Two (2) duplicate originals of this Agreement shall be executed, each of which shall be deemed an original but both of which together shall constitute one and the same instrument.

**15. Entire Agreement.** This Agreement contains the entire agreement of the parties and there are no oral or written representations, understandings or agreements between the parties respecting the subject matter of this Agreement which are not expressed herein.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be effective as of the day and year first above set forth.

| STERLING PLANET, INC. | SELLER |
|---|---|
| Signed: _(signature)_ | Signed: _(signature)_ |
| Name: Mel Jones | Name: Bob Ellery |
| Title: President and Chief Executive Officer | Title: Director of Energy Resources |

### TABLE 1

Below is the Green Generator Renewable Project and its location that is supplying Green Project Certificates under this Agreement.

| RENEWABLE PROJECT 1: | SELLER |
|---|---|
| Plant Name: Sonora | First Date of Operation: May 2001 |
| Plant Type: Biomass – Saw Mill Residue | Location City, State:    Sonora, California |
| Plant Size (in MW or kW): 7.5 MW | Annual MWh Sold to Sterling Planet: |
| | 35,000 in 2005 |

| RENEWABLE PROJECT 2: | SELLER |
|---|---|
| Plant Name: Quincy Unit #2<br>Plant Type:  Biomass – Saw Mill Residue<br>Plant Size (in MW or kW): 7.5 MW | First Date of Operation: November 1999<br>Location City, State:    Quincy<br>Annual MWh Sold to Sterling Planet:<br>                              40,000 per Year |

| RENEWABLE PROJECT 3: | SELLER |
|---|---|
| Plant Name: Lincoln<br>Plant Type:  Biomass – Saw Mill Residue<br>Plant Size (in MW or kW): 20 MW | First Date of Operation: December 2005<br>Location City, State:    Lincoln, California<br>Annual MWh Sold to Sterling Planet:<br>                              60,000 per Year Starting 2006 |

| RENEWABLE PROJECT 4: | SELLER |
|---|---|
| Plant Name: Anderson<br>Plant Type:  Biomass – Saw Mill Residue<br>Plant Size (in MW or kW):  5 MW | First Date of Operation: March 1998<br>Location City, State:    Anderson, California<br>Annual MWh Sold to Sterling Planet:<br>                              25,000 for 2005 |

## PAYMENT SCHEDULE

Below is the agreed to payment schedule for the Green Certificates purchased under this Agreement.

| | Payment Due Date | Amount |
|---|---|---|
| Payment 1 – For 8,334 MWh 2005 Biomass Green Certificates | 30 Days from Execution Date | $6,667.20 |
| Payment 2 – For 8,333 MWh 2005 Biomass Green Certificates | 10/1/05 | $6,666.40 |
| Payment 3 – For 8,333 MWh 2005 Biomass Green Certificates | 11/1/05 | $6,666.40 |
| Payment 4 – For 8,334 MWh 2005 Biomass Green Certificates | 12/1/05 | $6,667.20 |
| Payment 5 – For 8,333 MWh 2005 Biomass Green Certificates | 1/1/06 | $6,666.40 |
| Payment 6 – For 8,333 MWh 2005 Biomass Green Certificates | 2/1/06 | $6,666.40 |
| Payment 7 – For 8,334 MWh 2005 Biomass Green Certificates | 3/1/06 | $6,667.20 |
| Payment 8 – For 8,333 MWh 2005 Biomass Green Certificates | 4/1/06 | $6,666.40 |
| Payment 9 – For 8,333 MWh 2005 Biomass Green Certificates | 5/1/06 | $6,666.40 |
| Payment 10 – For 8,334 MWh 2005 Biomass Green Certificates | 6/1/06 | $6,667.20 |
| Payment 11 – For 8,333 MWh 2005 Biomass Green Certificates | 7/1/06 | $6,666.40 |
| Payment 12 – For 8,333 MWh 2005 Biomass Green Certificates | 8/1/06 | $6,666.40 |
| Payment 13 – For 8,334 MWh 2006 Biomass Green Certificates | 9/1/06 | $6,667.20 |
| Payment 14 – For 8,333 MWh 2006 Biomass Green Certificates | 10/1/06 | $6,666.40 |
| Payment 15 – For 8,333 MWh 2006 Biomass Green Certificates | 11/1/06 | $6,666.40 |
| Payment 16 – For 8,334 MWh 2006 Biomass Green Certificates | 12/1/06 | $6,667.20 |
| Payment 17 – For 8,333 MWh 2006 Biomass Green Certificates | 1/1/07 | $6,666.40 |
| Payment 18 – For 8,333 MWh 2006 Biomass Green Certificates | 2/1/07 | $6,666.40 |
| Payment 19 – For 8,334 MWh 2006 Biomass Green Certificates | 3/2/07 | $6,667.20 |
| Payment 20 – For 8,333 MWh 2006 Biomass Green Certificates | 4/1/07 | $6,666.40 |
| Payment 21 – For 8,333 MWh 2006 Biomass Green Certificates | 5/1/07 | $6,666.40 |
| Payment 22 – For 8,334 MWh 2006 Biomass Green Certificates | 6/1/07 | $6,667.20 |
| Payment 23 – For 8,333 MWh 2006 Biomass Green Certificates | 7/1/07 | $6,666.40 |
| Payment 24 – For 8,333 MWh 2006 Biomass Green Certificates | 8/1/07 | $6,666.40 |
| Payment 25 – For 8,334 MWh 2007 Biomass Green Certificates | 9/1/07 | $6,667.20 |
| Payment 26 – For 8,333 MWh 2007 Biomass Green Certificates | 10/1/07 | $6,666.40 |
| Payment 27 – For 8,333 MWh 2007 Biomass Green Certificates | 11/1/07 | $6,666.40 |
| Payment 28 – For 8,334 MWh 2007 Biomass Green Certificates | 12/1/07 | $6,667.20 |
| Payment 29 – For 8,333 MWh 2007 Biomass Green Certificates | 1/1/08 | $6,666.40 |
| Payment 30 – For 8,333 MWh 2007 Biomass Green Certificates | 2/1/08 | $6,666.40 |
| Payment 31 – For 8,334 MWh 2007 Biomass Green Certificates | 3/2/08 | $6,677.20 |
| Payment 32 – For 8,333 MWh 2007 Biomass Green Certificates | 4/1/08 | $6,666.40 |
| Payment 33 – For 8,333 MWh 2007 Biomass Green Certificates | 5/1/08 | $6,666.40 |
| Payment 34 – For 8,334 MWh 2007 Biomass Green Certificates | 6/1/08 | $6,667.20 |
| Payment 35 – For 8,333 MWh 2007 Biomass Green Certificates | 7/1/08 | $6,666.40 |
| Payment 36 – For 8,333 MWh 2007 Biomass Green Certificates | 8/1/08 | $6,666.40 |
| Payment 37 – For 8,334 MWh 2008 Biomass Green Certificates | 9/1/08 | $6,667.20 |
| Payment 38 – For 8,333 MWh 2008 Biomass Green Certificates | 10/1/08 | $6,666.40 |
| Payment 39 – For 8,333 MWh 2008 Biomass Green Certificates | 11/1/08 | $6,666.40 |
| Payment 40 – For 8,334 MWh 2008 Biomass Green Certificates | 12/1/08 | $6,667.20 |
| Payment 41 – For 8,333 MWh 2008 Biomass Green Certificates | 1/1/09 | $6,666.40 |
| Payment 42 – For 8,333 MWh 2008 Biomass Green Certificates | 2/1/09 | $6,666.40 |
| Payment 43 – For 8,334 MWh 2008 Biomass Green Certificates | 3/2/09 | $6,667.20 |
| Payment 44 – For 8,333 MWh 2008 Biomass Green Certificates | 4/1/09 | $6,666.40 |
| Payment 45 – For 8,333 MWh 2008 Biomass Green Certificates | 5/1/09 | $6,666.40 |
| Payment 46 – For 8,334 MWh 2008 Biomass Green Certificates | 6/1/09 | $6,667.20 |
| Payment 47 – For 8,333 MWh 2008 Biomass Green Certificates | 7/1/09 | $6,666.40 |
| Payment 48 – For 8,333 MWh 2008 Biomass Green Certificates | 8/1/09 | $6,666.40 |
| Payment 49 – For 8,334 MWh 2009 Biomass Green Certificates | 9/1/09 | $6,667.20 |
| Payment 50 – For 8,333 MWh 2009 Biomass Green Certificates | 10/1/09 | $6,666.40 |

| | | |
|---|---|---|
| Payment 51 – For 8,333 MWh 2009 Biomass Green Certificates | 11/1/09 | $6,666.40 |
| Payment 52 – For 8,334 MWh 2009 Biomass Green Certificates | 12/1/09 | $6,667.20 |
| Payment 53 – For 8,333 MWh 2009 Biomass Green Certificates | 1/1/10 | $6,666.40 |
| Payment 54 – For 8,333 MWh 2009 Biomass Green Certificates | 2/1/10 | $6,666.40 |
| Payment 55 – For 8,334 MWh 2009 Biomass Green Certificates | 3/2/10 | $6,667.20 |
| Payment 56 – For 8,333 MWh 2009 Biomass Green Certificates | 4/1/10 | $6,666.40 |
| Payment 57 – For 8,333 MWh 2009 Biomass Green Certificates | 5/1/10 | $6,666.40 |
| Payment 58 – For 8,334 MWh 2009 Biomass Green Certificates | 6/1/10 | $6,667.20 |
| Payment 59 – For 8,333 MWh 2009 Biomass Green Certificates | 7/1/10 | $6,666.40 |
| Payment 60 – For 8,333 MWh 2009 Biomass Green Certificates | 8/1/10 | $6,666.40 |

This payment schedule is valid only if Client pays Sterling Planet on time.  Should Client fall behind, Sterling Planet will pay Seller within five (5) business days of receipt of payment from Client.  In the event payment is not made within sixty (60) days of due date, the Seller reserves the right to terminate this Agreement.

Revision 6/2/2005